U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 2 3 2005
CLERK, U.S. DISTRICT COURT
By _____
        Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| YOLANDA PRICE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-042-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Yolanda Price seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.   Judicial Review**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g) (2003); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192

F.3d 492, 496 (5th Cir. 1999)). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision, and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Id.*

## II.   Statement of the Case

Price applied for DIB and SSI on December 21, 2002, after sustaining injuries in a car accident in April 2002. (Tr. 62-64, 96.) Price's injuries, which included hip dislocation, fractures to her left elbow and hip, and brain trauma, were treated with surgery and traction during a seven-week hospitalization. (Tr. 96, 98, 108, 147.) After Price was released from the hospital she remained in a wheelchair until July 22, 2002, when her treating surgeon, James Slauterbeck, M.D., recommended that she begin rehabilitation in order to advance to independent walking. (Tr. 183, 175.)

By October 21, 2002, Price was walking independently. (Tr. 170.) At that time, she complained of some stiffness in her left hip when she woke in the mornings but reported that the stiffness subsided and that she was without discomfort after ambulating. She also reported that her left elbow was doing well and denied complaints of pain. (*Id.*)

On April 15, 2003, Dr. Slauterbeck reported that Price had "some arthritis" in her hip and that she might need a total hip replacement in the future if the arthritis became painful. (Tr. 162.) On August 28, 2003, he reported that Price exhibited normal alignment and functional range of motion without pain in her right upper extremity with 5/5 grip strength;

2

well-preserved motion in her left upper extremity; and normal alignment and functional range of motion without pain in her left and right lower extremities with 5/5 strength in both knees. (Tr. 152-53; *see* 156.)

After a hearing an Administrative Law Judge (ALJ) found that despite her impairments, Price retained the functional capacity to perform sedentary work with limitations and that she was therefore not disabled. (Tr. 14-20.)

### III. Points of Error

Relying primarily on Social Security Ruling 02-01p, Price contends that the ALJ's decision is not supported by substantial evidence because he failed to consider her obesity throughout the sequential disability determination process. She contends that the ALJ failed to mention or discuss her weight in his decision and failed to even acknowledge that her obesity is a medically determinable impairment. She argues that the ALJ failed at step two of the sequential disability process to assess the impact of her obesity on her ability to function and failed to determine whether her obesity was a severe impairment. She argues that at step three, the ALJ failed to consider the effects of her obesity in combination with the effects of her severe impairments when determining whether her impairments met the criteria of a listed impairment. Finally, she argues that the ALJ failed to assess the limiting effects of her obesity when he determined her residual functional capacity.

### IV. Discussion

Ruling 02-01p advises that obesity often complicates chronic diseases of the cardiovascular, respiratory, and musculoskeletal systems. S.S.R. 02-01p, 2000 WL 628049

at *3. Therefore, in cases such as Price's, the claimant's obesity must be considered throughout the sequential disability evaluation process. *See id.*

At step two of the sequential disability evaluation process, obesity is characterized as a "severe impairment" when it, alone or in combination with other impairments, significantly limits the claimant's ability to do basic work activities. *Id.* at *4. On the other hand, a claimant's obesity is characterized as not severe when it has no more than a minimal effect on the individual's ability to do basic work activities. *Id.*

In this case, although the ALJ found that Price had severe impairments, he did not specifically state whether he found Price's obesity to be severe or not severe. (Tr. 15.) However, remand is not required on this ground because the evidence does not support a finding that Price's obesity was a severe impairment.

The record does establish that Price is obese, and the ALJ acknowledged that Price was 5 foot 1 inch tall and that her weight was recorded as 251 pounds in February 2003. (Tr. 16, 215-16.) However, there is no evidence in the record that would demonstrate that Price's obesity, either alone or in combination with her other impairments, significantly limited her ability to perform basic work activities.[1]

The evidence establishes that Price's obesity did not significantly affect her ability to perform basic work activities because she worked until one month before the car accident

---

[1] A consulting orthopedic surgeon did note that Price could not raise her legs beyond 60 degrees because she was markedly obese. (Tr. 216.) However, the fact that Price could not raise her legs above 60 degrees does not require a finding that her obesity significantly limited her ability to do work activities. Work activities generally do not require a worker to lift his or her legs at a straight angle, 20 C.F.R. § 404.1567, and the sedentary work the ALJ found that Price could perform would never require a worker to lift his or her legs at an angle greater than 60 degrees. (*See* Tr. 20).

despite her obesity. (Tr. 261.) The evidence also shows that even with the additional impairments caused by the injuries Price sustained in her accident, (Tr. 17), her obesity did not exacerbate or impact her limitations to a point that significantly limited her ability to work. In fact, there is an absence of any evidence in the record that would show that Price's obesity had any effect at all on her functional limitations.

The evidence regarding Price's obesity after her accident is limited to notations of her weight; notations indicating that she was obese; and recommendations that she lose weight, watch her diet, and exercise. (*See, e.g.,* Tr. 117, 169, 196, 203, 206.) None of Price's physicians indicated that her obesity was functionally limiting or that it exacerbated her other impairments. (*See, e.g.,* Tr. 162-63.) Further, Price never claimed that her obesity was a condition or impairment that contributed to her inability to work; she did not indicate such on her application documents and did not testify to such at the hearing. (Tr. 75-76, 262.)

Ruling 02-01p directs that in making determinations concerning a claimant's obesity, the ALJ must not make assumptions about the severity or functional effects of a claimant's obesity but must evaluate the claimant's limitations based on the information in the record. *Id.* at *6. Based on the information in the record before the ALJ, he did not err at step two of the evaluation process in failing to specifically characterize Price's obesity as a "severe impairment."

Likewise, the ALJ did not err at step three of the evaluation process. At step three, the claimant bears the burden of proving that he or she has an impairment that meets or

equals the criteria of an impairment listed in the Commissioner's regulations. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Although Price argues that the ALJ failed to consider her obesity in combination with the effects of her severe musculoskeletal impairments, she has not pointed to any evidence and the record does not include evidence that the ALJ should have considered or that would show that her impairments met the criteria of a listed impairment.

Finally, the ALJ did not err in determining Price's residual functional capacity. The ALJ found that Price could perform sedentary work that would allow for frequent opportunities to sit and stand while working. (Tr. 19.) Social Security Ruling 02-01p advises that obesity may cause exertional and non-exertional limitations and may cause fatigue that affects the claimant's abilities to sustain work activity. S.S.R. 02-01p, 2000 WL 628049 at* 6. Ruling 02-01p requires the ALJ to assess the effects obesity may have on the claimant's ability to perform routine movement and necessary physical activity in the work environment and to assess the claimant's ability to sustain work activities in an ordinary work setting on a regular and continuing basis. *Id.*

Again, the ALJ was not free to make assumptions about the effects of Price's ability; rather, he was limited to evaluating the evidence in the record, which did not contain evidence that Price's obesity limited her ability to perform the requirements of work. As noted above, Price worked despite her obesity. In fact, at the time of her accident which occurred one month after she quit working, Price weighed more than she weighed after

recovering from her injuries; she weighed 270 pounds at the time of her accident in April 2002 and 241 pounds in November 2003. (Tr. 117, 192.) The fact that Price was capable of working despite being obese supports a conclusion that her obesity did not affect her ability to perform the physical requirements of sedentary work or that it prevented her from sustaining such work.

This conclusion does not change when considering Price's obesity in combination with the impairments caused by her injuries. Price testified she was capable of lifting a gallon of milk (Tr. 266), that she could walk three to four blocks before her hip caused problems and she became fatigued and needed to rest (Tr. 264), that she could stand for 30 minutes, and that she could sit for 30 to 40 minutes before needing to stand (Tr. 266-67).

None of Price's physicians indicated in their examination notes that her obesity would limit her ability to work, would impair her ability to sustain work on a regular and continuing basis, or would significantly impact the limitations caused by her injuries. Dr. Slauterbeck's opinion that Price might need a hip replacement in the future is particularly significant in this regard. Although Dr. Slauterbeck noted that a hip replacement was a future possibility should Price's arthritis become too painful, he did not indicate that Price's weight would exacerbate pain caused by her arthritis and did not indicate that her weight would cause degeneration of her hip. (Tr. 162-63.)

Further, although Dr. Slauterbeck examined Price on a number of occasions and made findings regarding her functional abilities, he never indicated that her obesity was limiting

or that it affected the limitations caused by her injuries. (Tr. 152-63, 170, 175, 183-84.) He never indicated that the rehabilitation process was impaired by Price's obesity and never indicated that Price's obesity would limit her functional abilities after her rehabilitation. (*See* Tr. 170, 175, 184.)

It is also significant that physicians at a family medical clinic recommended that Price exercise on a regular basis. As early as February 2003 she was encouraged to exercise and in May 2003 it was recommended that she walk 30 minutes a day. (Tr. 200, 206).

Finally, an examining orthopedic surgeon noted that Price weighed 251 pounds and that she would have discomfort when she stood for any length of time and would have trouble lifting and carrying objects because of her hip. (Tr. 215-16.) He concluded, however, that Price was capable of moving about, sitting, and carrying and handling objects. (Tr. 215-16.) This medical opinion in addition to Price's testimony and the other medical evidence in the record supports the ALJ's finding that Price retained the abilities necessary to perform sedentary work that would allow frequent opportunities to sit or stand while working.

The foregoing evidence establishes that Price's obesity was not a severe impairment, did not meet the criteria of a listed impairment, and did not impose limitations that were contrary to the ALJ's residual functional capacity finding. Therefore, there is no cause for remand.

## V. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Price's Complaint with prejudice.

## VI. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _September 23_, 2005.

NANCY M. KOENIG
United States Magistrate Judge